IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT EVANS, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:08-CV-794** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **MAGISTRATE JUDGE KEMP** |
| **BOARD OF EDUCATION** | : | |
| **SOUTHWESTERN CITY SCHOOL** | : | |
| **DISTRICT, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## <u>OPINION AND ORDER</u>

### I. INTRODUCTION

This matter is before the Court on Defendants', Board of Education Southwestern City School District ("Southwestern"), Paul Smathers ("Smathers," and together with Southwestern, "Defendants"), Joyce Malainy ("Malainy"), Bradley Adams ("Adams"), and Adam Wise ("Wise"),[1] Motion for Summary Judgment.[2]  (Doc. 43.)  For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

---

[1]On December 30, 2009, Plaintiffs filed with this Court an Agreed Second Amended Complaint, which removed Malainy, Wise, and Adams as defendants in this action.  (Doc. 42.) As a result, Malainy, Wise, and Adams were terminated from this case.

[2]On March 5, 2010, Plaintiff Robert Evans ("Evans") filed a Motion to Strike Uncertified Documents Appended to Defendants' Summary Judgment Filings and for Order Striking Argument in Defendants' Reply.  (Doc. 82.)  On April 29, 2010, this Court entered an Order staying Evans Motion and giving Defendants 14 days to authenticate the records at issue.  (Doc. 89.)  On May 10, 2010, Defendants' submitted a Notice of Filing Authentication of Documents with Affidavit, in compliance with the Court's Order.  (Doc. 91.)  Accordingly, Evans Motion to Strike is hereby **DENIED**.

## II. BACKGROUND

Evans brings this suit on behalf of his daughter L.E.  Plaintiff , Tonya Riffe ("Riffe," and together with Evans, "Plaintiffs") brings this suit on behalf of her daughter B.R.[3]  Finland Middle School ("Finland") is a school in Southwestern City School District.  The school district is operated by Southwestern.  Southwestern is a political subdivision of the State of Ohio and is engaged in the governmental function of providing its students with a public education. Southwestern operates under a series of federal and state regulations.

### A. Factual

### 1. The 2007-2008 School Year

In August 2007, L.E. and B.R. were twelve-year old girls entering seventh grade at Finland.  Both L.E. and B.R. were transported to and from Finland by school bus.  Students riding the school bus were given assigned seats; boys were assigned seats in the front of the bus and girls were assigned seats in the back.

Not long after the start of the school year in August, M.C., a boy who also attended Finland and rode the same school bus as L.E. and B.R., began making comments to the girls on the bus, most often during the ride home from school in the afternoons.  These comments were sexual in nature and  included asking girls to show him their breasts and to have sex.  According to L.E. and B.R., while M.C. initially made these comments in general all of the females on the bus, he later began to focus his comments on L.E. and B.R.[4]  B.R. stated in her deposition that

---

[3]Both L.E. and B.R. are minors.  All other minors involved in this proceeding will also be referenced using their initials throughout this Opinion and Order.

[4]In their Response to Defendants' Motion for Summary Judgment, Plaintiffs' posit that "M.C. targeted L.E. and B.R. because the girls were 'more developed' than their classmates."

M.C.'s behavior intensified from verbal comments to physical contact.  According to B.R., M.C. would grab her and try to push her into his bus seat on multiple occasions each week.  M.C. would also hit B.R. on her buttocks or attempt to grab at her chest.  M.C. acted similarly towards L.E.

### a. The October 2007 Incident

One afternoon in October 2007, both B.R. and L.E. allege that M.C. physically assaulted them.  B.R. states that while she was walking to the front of the bus to dispose of some paper, M.C. reached out, grabbed B.R.'s pants, pulled them down, and exposed her underwear.  This incident was apparently witnessed by other students on the bus, who laughed.

On that same afternoon, L.E. alleges that she was sitting in her seat when M.C. and his friend, B.B., came to her assigned seat.  According to L.E., while B.B. grabbed her arms and pinned them down, M.C. pulled L.E.'s shirt down, and exposed one breast.  Neither B.R. or L.E. reported these incidents to the bus driver.

### b. Reports to School Officials

The next day at school, however, L.E. and B.R. went to see Diana McDaniel ("McDaniel"), the guidance counselor at Finland, and reported the incidents that had taken place on the school bus the previous afternoon.  L.E. and B.R. state that after hearing their version of the events, McDaniel asked both girls to write a statement.  McDaniel also indicated that the girls should not be treated in that manner and that the incidents would be taken care of.  L.E. and B.R. claim that, upon receiving their written statements, McDaniel threw them in the trash. Defendants claim that L.E. and B.R. reported only that they had been subjected to inappropriate

---

(Doc. 67 Pl. Resp. to Def. Mot. for Summ. Judg. p. 7.)

verbal comments, that nothing physical had happened, and that McDaniel never would have thrown the girls' written statements in the trash.

In the notes obtained by Plaintiffs from McDaniel, taken after these incidents, McDaniel writes that she had both B.R. and L.E. write a statement.[5]  According to McDaniel's notes, she and Adams, Finland's assistant principal, informed M.C. and another boy of the school's zero tolerance policy for the type of comments that M.C. had allegedly been making to B.R. and L.E. The following day, McDaniel's notes document that "M.C. did not listen & this day he tried to rub against legs (LE? or BR?) as he walked down the aisle."  (Doc. 71 p. 25 Pl. Ex. 1f.) At this point, McDaniel notes that she took M.C. to Smathers, Finland's principal, shared with Smathers that M.C. "isn't getting the message" and "filled Mr. S. In on what had transpired & left."  *Id.*

Plaintiffs' also assert that Smathers was again made aware of the ongoing harassment of L.E. and B.R. on the bus when B.R., at Riffe's urging, made a report directly to Smathers a month or two after the girls had met with McDaniel.  Riffe has stated that, after meeting with her daughter, Smathers called her.  During the hearing conducted by Southwestern pursuant to Evans's appeal of L.E.'s suspension, Smathers denied ever having spoken with Riffe or M.C. about any investigation into harassment.  At his deposition, however, Smathers admitted calling Riffe.[6]

---

[5]McDaniel "has no explanation as to why the statements disappeared" and testified that she turned the statements over the school secretary who was responsible for maintaining Finland's discipline files.  (Doc. 67 Pl. Resp. to Def. Mot. for Summ. Judg. p. 10.)

[6]Smathers's testimony at the hearing on the appeal of L.E.'s suspension is also contradicted by the testimony of A.G.  A.G., another student at Finland, testified that around January 2008, after winter vacation, she was called into the school office, where Smathers, with Adams present, questioned her as to whether she had witnessed anyone touch B.R. or L.E. inappropriately on the bus.

### c. The May 2008 Incident

On May 8, 2008, Plaintiffs allege that L.E. was sexually assaulted by M.C. while riding

the bus home from school.  On May 9, 2008, after another teacher saw her crying in the lunch

room and told her to go to the office, L.E. reported the incident and wrote the following

statement:

> On May 8, 2008 I was sitting in the last seat on the bus (#170) and [M.C.] came
> back to the back of the bus and sat down in my seat.  When he sat down he asked
> if he could see my breast and I said no like always. Then he stuck his hand up my
> shirt and I didn't say anything. So when we were on Frank Rd. at the light and he
> asked me to give him head and I said no then he said "thats (sic) gay."  Then after
> that he took my hand and put it on the outside of his shorts and said is it big
> enough for me then I said nothing. After that he took my hand and put it on the
> inside of his pants after that he pulled it and forced my head down there and after
> about 5 sec. I picked my head up and said "now what" and he put his hand on my
> head again and forced me down there again. After all this he got of (sic) the bus
> and [C.M.] said did you give [M.C.] head and I said yes.

(Doc. 71 p. 25 Pl. Ex. 1a, Statement of L.E.)  Smathers states that L.E. was reluctant to come

forward and that she was brought to the office by a teacher.  After speaking with L.E., Smathers

called the police and L.E.'s parents.  Smathers also called M.C. into the school office and called

M.C.'s mother.

After interviewing other student witnesses, Smathers suspended both L.E. and M.C. for

five days, concluding that the students had engaged in some consensual sexual activities and

caused a disruption of school.  Criminal charges were filed against M.C. and M.C. pled guilty to

an attempted assault charge.  L.E.'s parents took her to Jennifer Dorn, M.Ed., L.P.C.C., to begin

counseling and therapy.  Ms. Dorn concluded that L.E. suffers from Post-Traumatic Stress

Disorder.

### d. The Suspension Appeal Hearing

On May 12, 2008, Smathers completed a Notice of Intent to Suspend L.E., pursuant to which L.E. was suspended from school until May 19, 2009.  After receiving a Notice of Intent to Suspend, L.E.'s parents notified appealed Smathers's decision to Southwestern.  On May 28, 2008, a suspension appeal hearing was held.  After the hearing, Southwestern's designated hearing officer, Janice Collette, made certain findings of fact.  On June 3, 2008,  L.E.'s parents were advised of these findings and of the decision to affirm L.E.'s suspension in a letter.  After L.E.'s suspension, there were approximately three weeks remaining in the school year.  No further interaction between M.C. and L.E. occurred during this time.

### 2. The 2008-2009 School Year

L.E. reports that from the beginning of her eighth grade year she was subjected to repeated instances of sexual innuendo by fellow students.  In October 2008, L.E. and C.B., another girl, reported to McDaniel that K.T., a male classmate, was touching them inappropriately and making sexually charged comments.  K.T. was suspended as a result of this behavior.

Defendants report a different version of these events:

> L.E. claims that a different boy, K.T. began making comments to her about her chest and that he pinched another student, and poked her with a pencil. As was typical with L.E., she did not report it to anyone.  On October 2, 2008 L.E. was in the auditorium in a "Vikings" meeting which was a meeting with all eighth grade students.  K.T. made some additional remarks to her friend C.B., and L.E. told K.T. to shut up.  It was eventually reported to teacher Ms. Ison, who took her to the office, and the incident was fully investigated by Assistant Principal Adams.  K.T. also filed a complaint back against L.E., alleging inappropriate touching and comments.  Mr. Adams investigated the incident, found K.T.'s version not credible and suspended him for his actions against L.E. and C.W. (sic).

(Doc. 43 Def. Mot. for Summ. Judg. p. 13-14.)

## B. Procedural

On August 18, 2008 Plaintiffs initiated this action in federal court, alleging various claims for relief based on the occurrences of the 2007-2008 school year.  On January 1, 2009, Plaintiffs filed a Motion for Leave to amend their Complaint, seeking to add supplemental claims based on the incidents of the 2008-2009 school year. This Motion was denied without prejudice, later renewed by Plaintiffs, and granted by this Court on April 30, 2009.  On May 8, 2009, Plaintiffs filed an Amended Complaint.  An Agreed Second Amended Complaint was later filed on December 30, 2009.  (*See* supra n. 2.)

On December 31, 2009, Defendants filed their Motion for Summary Judgment, arguing that they are entitled to summary judgment on all claims.  The Motion for Summary Judgment has been fully briefed, orally argued, and is now ripe for decision

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving

party "may not rely merely on allegations or denials in its own pleading."  Fed. R. Civ.

P.56(e)(2); *see Celotex*, 477 U.S. at 324; *Search v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.

1994). The non-moving party must present "significant probative evidence" to show that there is

more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Co.*, 8

F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

In this case, Plaintiffs allege the following claims on behalf of L.E. and B.R. against

Defendants: (1) discrimination by Southwestern in violation of Title IX; (2) retaliation by

Southwestern in violation of Title IX; and (3) constitutional violations of equal protection and

due process.  Additionally, Evans alleges the following supplemental claims on behalf of L.E.

against Defendants:  (1) violation of Title IX against Southwestern for failing to take action

during the 2008-2009 school year given the incidents of the previous school year;

(2) constitutional violations of the equal protection and due process; (3) intentional or reckless

infliction of severe emotional distress; and (4) wanton misconduct.

### A. Res Judicata

Defendants argue that Plaintiffs Title IX and § 1983 claims are barred by the doctrine of

issue preclusion.  Defendants take the position that when the Southwestern hearing officer

upheld L.E.'s suspension, she necessarily found that any physical activity that occurred on the

bus was consensual.  According to Defendants, if the acts between L.E. and M.C. were

consensual, Plaintiffs can not prove liability or damages necessary for their claims to proceed.

Therefore, Plaintiffs are barred from relitigating the facts found by the Southwestern

hearing officer in connection with L.E.'s appeal of her suspension.

Plaintiffs contend that the Defendants have not met their burden to demonstrate that the same issues decided by the Southwestern hearing officer are the same as those at issue in this case. Plaintiffs take the position that since the Southwestern hearing officer was not empowered to address issues of discrimination under federal law, nor federal constitutional questions, then there is no basis for issue preclusion as to any of the claims before this Court.

The parties arguments surrounding issue preclusion involve two contentions concerning to what extent: (1) the parties are prohibited from relitigating factual issues; and (2) the Southwestern hearing officer's factual findings and upholding of L.E.'s suspension necessarily means, as a matter of law, that there is no possibility Plaintiffs could succeed on their federal law and federal constitutional claims.

The doctrine of res judicata "[i]n its general sense... refers to the preclusive effects of former proceedings." *Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985). Res judicata encompasses both claim and issue preclusion. *Id*. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984). Issue preclusion, or collateral estoppel, refers to the effect of a judgment barring relitigation of a matter that has previously been litigated and decided. *Id*. In determining whether to give preclusive effect to the prior Ohio state court determinations in this case, this Court must look to Ohio law. 28 U.S.C.S. § 1738; *Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005). Ohio law requires that "the party asserting preclusion must prove that the identical issue was actually litigated, directly determined, and

-9-

essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200-01 (Ohio 1983).

There are four requirements for establishing res judicata, or more precisely in this case, claim preclusion: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997).

With regard to the first prong, the United States Supreme Court has expressly held that "when a state agency 'acting in a judicial capacity...resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797 (1986). The same is applicable in subsequent actions brought under 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90 (1980) (issue preclusion), *Migra*, 465 U.S. at 77 (claim preclusion).

In this case, L.E. was represented by counsel at the hearing on her suspension appeal, had the opportunity to present witnesses, and was able to cross-examine the District's witnesses. This Court, therefore, is bound to give preclusive effect to the factual findings of the Southwestern hearing officer. *See Wood v. Strickland*, 420 U.S. 308, 326 (1975) (Section 1983 "does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public

-10-

education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members....").

Defendants contend that "the factual findings and conclusions of the Hearing Officer went to whether or not L.E. was forced or was consensually involved in inappropriate behavior on the bus." (Doc. 96 Def. Resp. to Pl. Sur-Reply p. 8.). The findings of fact state that while L.E. "acknowledged that she participated in the sexual activity she reported that she was forced to participate in some of the conduct." (Doc. 64 p. 64.) The Southwestern hearing officer further found that "the sexual activity between [L.E.] and the male student caused a disruption of school since many students were talking about the incident during school time thereby diverting attention from school activities, and the principal had to disrupt instruction to interview students regarding the incident." *Id*. at 65. The Southwestern hearing officer found that L.E. had violated the South-Western City Schools Student Code of Conduct for Disruption of School. *Id*.

Nowhere in the her written findings of fact does the Southwestern hearing officer make a determination that the behavior on the bus was consensual.[7] Rather, the Southwestern hearing officer rests her affirmation of L.E.'s suspension on the basis that L.E. was involved in a school disruption. The argument that by upholding L.E.'s suspension, the Southwestern hearing officer necessarily found as true those allegations included in the district's Notice of Intent to Suspend, lacks support in the actual written findings of fact of the hearing officer.[8] The findings of the

---

[7]Indeed a finding that the physical activity between L.E. and B.R. was consensual would be directly at odds with the fact that M.C. pled guilty to attempted assault for his activity on the bus.

[8] The hearing officer allegedly upheld L.C.'s suspension based on the Notice of Intent Suspend, which was completed by Smathers. This is not determinative on the issue of whether L.C. consented to any sexual activity that occurred because Smathers explicitly did not make a

hearing officer do not state that L.E. was not forced to engage in some sexual behavior with M.C. The Southwestern hearing officer also affirmed L.E.'s suspension on the basis of disruption and not any sexual activity, which Defendants contend is also a basis on which L.E. was suspended. Thus, the hearing officer findings did not establish that L.E.'s actions were consensual and the first prong of the preclusion analysis is not met.

The second prong of the preclusion analysis is partially met. L.C. and Southwestern were both parties at the suspension appeal hearing. With regard to the third prong, the only "issue" presented and decided in the suspension appeal hearing was the suspension itself. Thus, the requirement that the issue actually have been litigated or decided in the previous action is not met. As to the fourth prong of the analysis requiring identical causes of action, the Southwestern hearing officer was not authorized or empowered by law to adjudicate federal constitutional or other federal law claims. *See* OHIO REV. CODE 3313.66. In this litigation, Plaintiffs assert constitutional or other federal claims that *have never been decided* and are therefore not precluded. *See Barnes v. McDowell*, 848 F.2d 725, 730 (6th Cir. 1988) (holding that where the plaintiff's action "involves a constitutional issue which was not involved in the state proceedings, the district court erred in concluding that the doctrine of issue preclusion bars further litigation"). Therefore, the causes of action are not identical in this case and the fourth prong is not met. Because all four of the requirements for preclusion are not met, this case is not barred by the doctrine of res judicata.

---

determination as to whether the sexual activity was consensual.

### B. Title IX Claims

As a threshold matter, Title IX claims cannot be pled against an individual defendant. *See Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, (1999).  Here, Plaintiffs have alleged Title IX claims against Southwestern.

Plaintiffs argue that Southwestern is liable under Title IX for acting with deliberate indifference in failing to respond to the ongoing sexual harassment and abuse of L.E. and B.R. during the 2007-2008 school year.  Plaintiffs further contend that Southwestern is liable for retaliation under Title IX because it suspended L.E. even though she was a victim of sexual assault.  Lastly, Evans argues that Southwestern is liable under Title IX for its actions during the 2008-2009 school year because the board ratified Smather's suspension of L.E. and did nothing to emphasize to the student body that actions like those of M.C. would not be tolerated.

Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a) (2000 ed.)  Title IX applies to student-on-student sexual harassment.  *Davis*, 526 U.S. at 641 ("Here, petitioner attempts to hold the Board liable for its own decision to remain idle in the face of known student-on-student harassment in its schools.").

### 1. Discrimination Claims

To establish a prima facie case for discrimination under Title IX a plaintiff must establish by a preponderance of the evidence that: "(1) she was subjected to ... a sexually hostile environment; (b) (sic) she provided actual notice of the situation to an 'appropriate person," who was, at a minimum, an official of the educational entity with authority to take corrective action and end discrimination; and (c) (sic) the institution's response to the harassment amounted to

'deliberate indifference.'" *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001); *see also Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274,287-88 (1988).  In Title IX cases, however, "institutional liability can only attache if underlying sex discrimination indeed occurred."  *Klemencic*, 263 F.3d at 511.

### a. Sexually Hostile Environment

Defendants argue that Plaintiffs can not satisfy their burden of proving that the alleged sexual harassment deprived them of access to educational opportunities or benefits provided by the school, and that they can not show a systemic effect on educational programs or activities. Plaintiffs take the position that a single incident of discrimination can be legally sufficient to satisfy this claim and that the facts present in the record in this case are sufficient to establish actionable student-on-student sexual harassment.

Here, Plaintiffs must show that "the educational experience was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions' of her education and create a sexually hostile environment." *Johnson v. Galen Health Institutes, Inc.*, 267 F. Supp.2d 679, 685 (W.D. Ky. 2003) A single incident of sufficient seriousness can give rise to a hostile environment.  *Vance v. Spencer Cty. Pub. Schl*, 231 F.3d 253, 259 (6th Cir. 2000); see also *Lopez v. Metropolitan Government of Nashville and Davidson County*, 646 F.Supp. 891, 913 (M.D. Tenn. 2009) ("even a single incident of rape is sufficient to establish that a child was subjected to severe, pervasive, and objectively offensive sexual harassment for purposes of Title IX")

Under the case law of the Sixth Circuit, the May 8, 2008 incident would satisfy this prong.  Material facts are in dispute, however, as to whether the incident on the bus was consensual or forced.  Therefore, summary judgment is inappropriate.

### b. Actual Notice to Appropriate Person

Defendants argue that there is no evidence that Smathers had actual knowledge of the October 2007 incident and that he dealt with the May 8, 2008 incident appropriately.  Plaintiffs contend that the agents of Southwestern were placed on notice that they were being verbally and physically harassed.

The second prong is met with proof that the institution was put on notice of "facts that indicate the likelihood of discrimination."  *Massey v. Akron City Bd. of Ed.*, 82 F.Supp.2d 735, 744 (N.D. Ohio 2000).  Additionally, an agent of the district is not entitled to claim that notice requires proof of actionable sexual harassment before the Board is required to respond.  *Hart v. Paint Valley Local Sch. Dist.*, 2002 U.S. Dist. LEXIS 25720 at *19, 20 (S.D. Ohio November 15, 2002) (Sargus, J.) (citing *Doe v. Administrative Dist. No. 19*, 66 F.Supp.2d 57, 63 (D. Me. 1999) ( "standard does not set the bar so high that a school district is not on notice until it receives a clearly credible report of sexual abuse from a plaintiff-student")).

There are material facts in dispute as to what was reported to the "appropriate persons" under the policies of Southwestern and when reports were made.  Plaintiffs contend that McDaniel and Smathers were put on notice early on during the 2007-2008 school year of the ongoing harassment.  Smathers himself has given conflicting testimony as to when he was made aware of the problems which L.E. and B.R. were facing.  Therefore, summary judgment is inappropriate.

-15-

### c. Deliberate Indifference

Defendants argue that Smathers and McDaniel acted reasonably in responding to Plaintiffs' Complaints once they were put on notice.  Plaintiffs contend that Southwestern did not take appropriate action to remedy the hostile environment that L.E. and B.R. faced.

Under the third prong, Southwestern is liable if it had notice of discrimination and took no action to remedy the situation.  Johnson, 267 F. Supp.2d 688 n. 8.  Proof that a school made a deliberate decision not to remedy the known discrimination is shown by evidence that the school did nothing to stop harassment.  *Horner v. Kentucky High Sch. Athletic Ass'n.*, 206 F.3d 685, 692 (6th Cir. 2000).  The law requires that the district "must merely respond to known peer harassment in a manner that is not clearly unreasonable."  *Davis*, 526 U.S. at 648.  Deliberate indifference is established where: (1) a school district has notice; and (2) when the district's inaction causes the victim to undergo harassment or "make them more liable or vulnerable to it."  *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 446 (6th Cir. 2008).

There are material facts in dispute as to: (1) when the district, or it's agents, were notified as to the harassment; and (2) what actions were taken to address or end the harassment; and (3) when, if ever, such actions were taken.  Plaintiffs argue that Smathers actions in response to the May 8, 2008 incident can not account for his failure to respond earlier.  Additionally, Plaintiffs contend that Smathers actions during the 2007-2008 school year were not sufficient as harassment continued in the 2008-2009 school year.  Indeed, Smathers himself has provided conflicting accounts regarding his actions in response to the harassment.  Therefore, summary judgment is inappropriate.

-16-

### 2. Retaliation Claim

In order to state a claim for retaliation under Title IX a plaintiff must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action.  *Burwell v. Pekin Comm. High School Dist. 303*, 213 F.Supp.2d 917, 934 (D.C. Ill. 2002).  Under Title IX intentional retaliation against a victim of sexual harassment is actionable.  *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 175-83 (2005).

Here, Defendants argue that L.E. can not point to any statutorily protected activity. Plaintiffs argue that a dispute exists over Smathers's motivation for suspending L.E.

As a legal matter, L.E.'s claim for retaliation does not fail as a matter of law.  See Jackson, 544 U.S. at 178 ("the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'").  Rather, L.E.'s claim for retaliation depends on factual determinations which are disputed by the parties, making summary judgment inappropriate.  These factual determinations include whether: (1) the sexual activity occurring on the bus on May 8, 2008 was consensual or forced; and (2) L.E. was suspended in retaliation for speaking out against the ongoing sexual harassment she was encountering from male students.

### C. 42 U.S.C. § 1983 Claims

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs state that they "do not intend to pursue their Section 1983 or equal protection claims against Southwestern or the equal protection claim against the remaining individual Defendant Smathers."  (Doc. 67

Pl. Resp. to Def. Mot. for Summ. Judg. p. 6.)  Therefore, Southwestern's Motion for Summary

Judgment is **GRANTED** on Plaintiffs' third claim and Evans's second supplemental claim.

Plaintiffs allege that Smathers violated B.R. and L.E.'s individual right to personal

security and bodily integrity, which is protected by the Fifth and Fourteenth Amendments to the

Constitution.  Defendants take the position that: (1) Smathers is entitled to qualified immunity;

and (2) even if Smathers's is not entitled to qualified immunity, Plaintiffs have failed to prove

that he is individually liable.

Section 1983 of 42 U.S.C. provides:

> Every person who under color of any statute, ordinance, regulation, custom, or
> usage, of any State ... subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

In order to succeed on a Section 1983 claim, a plaintiff must establish, by a

preponderance of evidence, that the defendant, acting under color of state law, deprived the

victim of a right secured by the Constitution or other law.  *Waters v. City of Morristown*, 242

F.3d 353, 358-59 (6th Cir. 2001).  In general, the state does not have an affirmative duty to

protect its citizens from private acts of violence.  *Kallstrom v. City of Columbus*, 136 F.3d 1055,

1066 (6th Cir. 1998).  Here, Smathers is liable if: (1) his actions were affirmative acts that

created or increased the danger that L.E. or B.R. would be exposed to injurious conduct by other

students; (2) his actions especially endangered L.E. and B.R.; and (3) he had the requisite degree

of conduct.  *Wilson v. Columbus City Schs.*, 589 F. Supp. 2d 952, 962 (6th Cir. 2008) (Marbley,

J.) (citing *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006.).

-18-

For Section 1983 claims, the requisite standard of culpability is deliberate indifference. *Arledge v. Franklin County, Ohio*, 509 F.3d 258, 263 (2007) (internal citations omitted). Deliberate indifference requires a showing that the state official "knows of and disregards an excessive risk to [the victim's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Having drawn the inference, the official must act or fail to act in a manner demonstrating "reckless or callous indifference" toward the individual's rights. *Ewolski v. Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002) (citing *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 797 (1st Cir.1990)).

In this case, material facts are disputed that preclude summary judgment on Plaintiffs Section 1983 claims.  There is conflicting information, including testimony from Smathers on two different occasions during which he provides two different accounts of his own actions, as to (1) when, if ever, during the 2007-2008 school year, Smathers was notified of B.R. and L.E.'s reports; (2) what actions, if any, Smathers took to address the situation; (3) what Smathers considered during his investigation of the May 8, 2008 incident; and (4) any remedial measures taken by Smathers after the May 8, 2008 incident prior to the October 2008 incident.

### 1. Qualified Immunity

The Supreme Court typically employs a two-step analysis to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201(2001)).  In *Pearson v. Callahan*, the Supreme Court held that

-19-

rigid adherence to Saucier's two-part test is not mandated and, therefore, lower federal courts have some flexibility to depart from the protocol and consider first the issue of whether a right is clearly established. *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009) (stating "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional question at all").

As to the first prong of the analysis, the "clearly established" question examines "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. In ruling on a motion for summary judgment, whether there has been a constitutional violation is a question of law for the Court to decide. *Fettes v. Hendershot*, slip op. Case No. 08-4419 2010 WL 1687727 (6th Cir. April 27, 2010). At the summary judgment stage, "[w]hether there is a genuine issue of material fact is immaterial to a qualified immunity analysis because the court assumes the facts are as the plaintiff alleges." *Id*. at *3 ("All that remains is the question of law whether, taking the facts as the plaintiff alleges them, the plaintiff's clearly established constitutional rights were violated.").

In their Amended Complaint, plaintiffs allege that Smathers violated B.R. and L.E.'s individual right to personal security and bodily integrity, which is protected by the Fifth and Fourteenth Amendments to the Constitution. Although there are genuine issues of material fact in dispute as to Plaintiffs § 1983 claims, the relevant inquiry at this stage in the qualified immunity analysis is whether a constitutional violation occurred. Plaintiffs have alleged such a violation.

-20-

As to the second prong of the qualified immunity analysis, whether a law is "clearly established" is to be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008). A "right can be clearly established even if there is no case involving fundamentally similar or materially similar facts if the premise of a prior case alerts officials to the clear applicability of the legal principle to a subsequent set of facts." *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003) (internal citations and quotation marks omitted). Under Sixth Circuit case law, however, it is "well-settled precedent" that "in a non-custodial setting, a governmental actor can be held responsible for an injury committed by a private person if that governmental actor increases the risk of harm to the plaintiff and acts with deliberate indifference." *Wilson*, 589 F. Supp. 2d at 964 (holding that it would have been clear to a reasonable person in the position of the defendant assistant principle that issuing a suspension, and potentially subjecting the suspended student to a dangerous environment, could subject the defendant to constitutional liability). In this case, Plaintiffs have alleged that Smathers both increased the harm to L.E. and B.R. and was deliberately indifferent to the problems the girls were facing at school. The Plaintiffs have presented evidence that Smathers was repeatedly made aware of the ongoing harassment facing L.E. and B.R., that he failed to address the situation or take any remedial measures, and that he then retaliated against L.E. by suspending her when she was subject to forced sexual conduct. Therefore, Smathers is not entitled to qualified immunity in this case. *Id*

### D. State Claims for Relief

Defendants argue that they are entitled to summary judgement on Evans's supplemental claims alleging intentional infliction of emotional distress and wanton misconduct. Defendants

argue that Southwestern is entitled to political subdivision immunity for intentional tort claims and that punitive damages are not permitted against a political subdivision as a matter of law. Further, Defendants claim that there is ample support that none of the actions of Smathers rise to the level of culpability required for intentional infliction of emotional distress or wanton misconduct.

Under Ohio law "with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts." *Wilson v. Stark City Dept. Of Human Serv.*, 70 Ohio St.3d 450, 452 (Ohio 1994) (citing *Garrett v. Sandusky*, 68 Ohio St.3d 139 (1994)) ("There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case.") Therefore, Evans's claim against Southwestern for intentional infliction of emotional distress fails as a matter of law. Southwestern is entitled to summary judgment on Evan's third supplemental claim for intentional or reckless infliction of severe emotional distress.

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Quintile v. Medina County*, 2008 WL 2484173, *8 (N.D. Ohio June 17, 2008) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct.App.1997)). Plaintiffs have alleged each of the required elements in their First Amended Complaint.

-22-

As discussed above, Smathers actions are among the material facts that are disputed by Plaintiffs and Defendants. Plaintiffs argue that Smathers was made aware, on several occasions, of the sexually charged comments and inappropriate physical touching that B.R. and L.E. were encountering on the bus. Plaintiffs further allege that Smathers did not act appropriately or promptly in addressing this behavior. Plaintiffs have provided evidence that L.E. was adversely affected by Smathers's actions.

Defendants contend that L.E. was not emotionally distressed, and that while her grades may have been effected by certain events during the 2007-2008 school year, she showed improvement during the 2008-2009 school year, was promoted, and is now a high school student.

Because the actions of Smathers are unclear and disputed, this Court is unable to determine whether Smathers's actions rise to the level of culpability required for intentional infliction of emotional distress or wanton misconduct. Therefore, Smathers is not entitled to summary judgment on Evans's third and forth supplemental claims for intentional infliction of emotional distress and wanton misconduct, respectfully.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED in part** and **DENIED in part**. The following claims remain against Southwestern: (1) Plaintiffs' first claim for discrimination under Title IX; (2) Plaintiffs' second claim for retaliation under Title IX; (3) Evans's first supplemental claim for violations of Title IX during the 2008-2009 school year; (4) Evans's fourth supplemental claim for wanton misconduct. The following claims remain against Smathers: (1) Plaintiffs' third claim under § 1983; (2) Evans's

-23-

second supplemental claim under §1983; (3) Evans's third supplemental claim for intentional or reckless infliction of severe emotion distress; and (4) Evan's fourth supplemental claim for wanton misconduct.

IT IS SO ORDERED.

    s/Algenon L. Marbley
ALGENON L. MARBLEY
UNITED STATES DISTRICT COURT

Dated: July 20, 2010